UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

---

Caption in Compliance with D.N.J. LBR 9004-1(b)

DOUGLAS G. LENEY
MICHAEL S. HORN
ARCHER & GREINER
A Professional Corporation
1025 Laurel Oak Road
Voorhees, NJ  08043
Tel: (856) 795-2121
dleney@archerlaw.com
mhorn@archerlaw.com

*Attorneys for Plaintiffs, EarthCam, Inc., VGG Holdings, LLC, and 620 East Crescent LLC*

---

| | |
|---|---|
| In re:<br><br>CHARLES JOSEPH VINCENT,<br><br>      Debtor. | Chapter 7<br><br>Case No. 25-15111-JKS |
| EARTHCAM, INC., VGG HOLDINGS, LLC, and 650 EAST CRESCENT LLC,<br><br>      Plaintiff,<br><br>   v.<br><br>CHARLES JOSEPH VINCENT,<br><br>      Defendant. | Adv. Pro. No. 25- |

## COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

Plaintiffs, EarthCam, Inc. ("EarthCam"), VGG Holdings LLC, and 650 East Crescent LLC ("Plaintiffs"), by and through its undersigned attorneys, Archer & Greiner, P.C., as and for its Complaint against the above-captioned debtor, Charles Joseph Vincent (the "Debtor" or "Defendant"), respectfully allege as follows:

1

**INTRODUCTION**

1.      Over the course of seven years, and unbeknownst to Plaintiffs, Debtor exploited his executive position to convert and misappropriate over $700,000.00 from EarthCam in unauthorized and unapproved salaries and/or bonuses and disbursements for his own benefit and exploited over $331,596.04 from 650 East Crescent LLC and over $90,842.43 from VGG Holdings LLC.

2.      Were that not enough, Debtor was also involved in a fencing scheme designed to divert EarthCam's money and goods.  Indeed, Debtor, together with his non-party co-conspirators, manufactured and processed hundreds of purchase orders, utilized EarthCam monies to pay for those cameras fulfilled via those manufactured purchase orders and corresponding invoices, unlawfully removed those cameras from EarthCam's warehouse, and then resold those stolen cameras to EarthCam and the public-at-large.

**JURISDICTION, VENUE, AND STATUTORY PREDICATES**

3.      On May 13, 2025 (the "Petition Date"), Debtor filed a voluntary petition for relief under chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), Case Number 25-15111-JKS (the "Bankruptcy Case").

4.      On or about May 14, 2025, Nancy Isaacson was appointed as the chapter 7 trustee (the "Trustee") for the bankruptcy estate of the Debtor.

5.      This Court has jurisdiction of this adversary proceeding pursuant to, *inter alia*, 28 U.S.C. § 1334, Rules 4004(a), 4007 and 7001(6) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and 11 U.S.C. §§ 523 and 105(a).

6.      This adversary proceeding is a core proceeding under 28 U.S.C. § 157(2)(I).

7.     Venue of this adversary proceeding in this judicial district is appropriate pursuant to 28 U.S.C. § 1409(a), as this proceeding arises in or is related to a case arising under Title 11, which is presently venued in this district as set forth above.

## **PARTIES**

8.     EarthCam is a Delaware corporation with a principal place of business located at 650 East Crescent Avenue, Upper Saddle River, New Jersey 07458.

9.     VGG Holdings, LLC is a New Jersey Limited Liability Company with a principal place of business located at 650 East Crescent Avenue, Upper Saddle River, New Jersey 07458.

10.     650 East Crescent LLC is a New Jersey Limited Liability Company with a principle place of business located at 650 East Crescent Avenue, Upper Saddle River, New Jersey 07458.

11.     Debtor is a citizen of New Jersey with a last known address of 30 Brandywine Place, Oakland, New Jersey 07436.

12.     As more fully described herein, EarthCam is a creditor of the Debtor, holding a variety of claims against the Debtor arising from the factual allegations pled herein, in an amount of not less than $13,827,469.40.  On August 18, 2025, EarthCam filed Proof of Claim No. 1 in the Bankruptcy Case in the aggregate amount of no less than $13,827,469.40.[1]

13.     VGG Holdings, LLC is a creditor of the Debtor, holding a claim against the Debtor arising from the factual allegations pled herein, in an amount of not less than $90,842.43.  On August 18,2025, VGG Holdings, LLC filed Proof of Claim No. 2 in the Bankruptcy Case in the aggregate amount of no less than $90,842.43.

---

[1] Inexplicably, and despite the existence of one or more actions pre-petition involving EarthCam and Debtor, Debtor failed to schedule EarthCam as a creditor – of any type and in any amount – in his Schedules and Statement of Financial Affairs ("SOFA").

14.     650 East Crescent LLC is a creditor of the Debtor, holding a claim against the Debtor arising from the factual allegations pled herein, in an amount of not less than $331,596.04. On August 18, 2025, 650 East Crescent LLC filed Proof of Claim No. 3 in the Bankruptcy Case in the aggregate amount of no less than $331,596.04.

## FACTS COMMON TO ALL COUNTS

15.     650 East Crescent LLC and VGG Holdings LLC are real estate holding companies.

16.     EarthCam is a global leader in providing webcam content, technology, and services. Founded in 1996, EarthCam exists to encourage exploration, foster discovery, and connect people through innovative live camera technology. To offer its camera and technology systems to consumers, EarthCam utilized hardware purchased from camera suppliers and retailers, B&H and Adorama, with whom EarthCam had an ongoing contractual business relationship.

17.     EarthCam employed Debtor as its Controller from September 2014 until March 2023.

18.     As Controller, Debtor was responsible for EarthCam's payroll, daily operational accounting, including accounts payable functions, and tax reporting.

19.     Debtor also had responsibility for and access to EarthCam's accounting and financial records and reports.  It was Debtor's responsibility to ensure that such records and reports were properly administered for EarthCam's sole benefit.

**I.      Debtor's Embezzlement Schemes**

20.     As Controller, Debtor held a position of trust at EarthCam and one which imposed a fiduciary duty to handle payroll and W-2 tax reporting in a competent, honest manner and to not self-enrich himself by deception or otherwise.

4

21.     By virtue of the trust and confidence reposed in him by EarthCam, as well as by virtue of his position as Controller, Debtor owed fiduciary obligations to EarthCam and was obligated to act in the best interest of EarthCam and not for the interest of himself.

22.     Rather than use his position and access to EarthCam funds, accounting and financial books and records for the benefit of EarthCam as was his fiduciary duty, Debtor abused the company's trust and confidence and embezzled company funds for his sole benefit.

**A.     The Unauthorized Compensation Payments from EarthCam**

23.     In early 2023, EarthCam discovered that Debtor had been conducting a surreptitious embezzlement scheme since approximately 2015 from which he converted and diverted several hundreds of thousands of dollars from EarthCam.

24.     From 2015 to 2022, Debtor paid himself unauthorized salaries and awarded himself bonuses without the knowledge, authorization, or approval of EarthCam.  For instance, Debtor paid himself by payment monies from EarthCam to certain taxing authorities which were paid in Debtor's name and then he procured a refund from those taxing authorities.

25.     Debtor misappropriated a total of approximately $451,153.83 in excess compensation as follows:

| Year | Amounts |
|------|---------|
| 2015 | $3,461.53 |
| 2016 | $5,000 |
| 2017 | $7,692.30 |
| 2018 | $10,000 |
| 2019 | $25,000 |
| 2020 | $25,000 |
| 2021 | $125,000 |
| 2022 | $250,000 |

26.    In addition to those unauthorized compensation, Debtor caused EarthCam to pay an aggregate amount of $7,572.40 to satisfy a wage garnishment order entered against him by the New Jersey Superior Court and without withholding those payments in his paychecks. Indeed, Debtor failed to withhold those payments in his paycheck but, instead, improperly caused EarthCam to pay those amounts.

27.    Debtor utilized and exploited his position as a trusted employee and Controller of EarthCam to divert the funds and conceal his embezzlement.

28.    To conceal his misappropriation, Debtor reported the unauthorized payments and disbursements as bonuses on EarthCam's payroll and then reported those funds to state and federal tax agencies as overpayment of Debtor's personal income tax liability.  And, in effect, those monies in excess of Debtor's income tax liability would be returned to him through inflated tax returns.

29.    To that end, on or about March 10, 2023, Debtor told EarthCam Chief Executive Officer, Brian Cury, that "everything was screwed up" with the W-2's, that Debtor called ADP (EarthCam's payroll processing and management services vendor) to instruct them to put the money back into EarthCam's payroll account, and that, "it's all reversed."  However, to date none of the unlawfully converted monies have been returned EarthCam.

30.    EarthCam terminated Debtor on or about March 10, 2023.

31.    The total amount taken from EarthCam as a result of this scheme was not less than $458,726.23.

**B.    The Unauthorized Disbursements from VGG Holdings and 650 East Crescent**

32.    As Controller, Debtor also was responsible for the books associated with VGG Holdings LLC and 650 East Crescent LLC, entities managed at EarthCam's facility.

6

33.    Between 2026 and 2022, Debtor used both VGG Holdings LLC and 650 East Crescent LLC to pay personal expenses.

34.    Indeed, Debtor made disbursements to himself from accounts of VGG Holdings LLC and 650 East Crescent LLC, totaling $422,438.47, to pay for his personal expenses, including but not limited to personal loans and credit cards.

35.    Those disbursements were made without the knowledge, authorization, or approval of EarthCam, VGG Holdings LLC or 650 East Crescent LLC and were made for Debtor's benefit.

36.    Debtor was not authorized to use VGG Holdings LLC and 650 East Crescent LLC to pay any of his personal expenses and was not authorized to pay his credit card using the funds of those entities.

37.    The amount taken from those entities was in excess of Four Hundred and Twenty-Two Thousand Four Hundred and Thirty-Eight Dollars and Forty-Seven Cents ($422,438.47).

## II.    Debtor's Fraudulent Fencing Scheme

38.    Following Debtor's termination, and through its investigation into Debtor's embezzlement, EarthCam uncovered a years-long stolen property purchasing operation perpetuated on EarthCam and orchestrated and executed by Debtor, in collusion with EarthCam's then-Director of Operations, Charles Dilkes ("Dilkes"); EarthCam's camera retailers, B & H Foto & Electronics Corp., BH Photo Video, Inc., Yosef Leaf (collectively, "B&H"), and Adorama Camera Inc., Adorama Shipping, Inc., and Adorama Inc. (collectively "Adorama"); and an intermediary fence, Edwin DeVia ("DeVia") (collectively, the "Non-Party Conspirators" or "Co-Conspirators").

39.    The central part of the scheme was to steal consumer-oriented cameras from EarthCam's warehouse in New Jersey, falsify EarthCam's internal records that track cameras to

7

make it appear that the cameras were "dispensed", transfer those cameras to a fence, namely DeVia, and then sell them to B&H and Adorama in New York, at a heavy discount. Thereafter, B&H and Adorama would sell the same cameras either back to EarthCam or to the public at large, representing that those cameras were new and sourced directly from the manufacturers.

40. There is a pending civil case involving this scheme in the United States District Court for the Southern District of New York under the caption *B&H v. EarthCam v. Vincent, et al*, Civil Action No. 1:23-cv-07633-MMG ("NY Civil Action"). A true and accurate copy of the Second Amended Third-Party Complaint asserting the claims relevant to this section is annexed hereto as Exhibit 1.

41. To provide its camera and technology services to consumers, EarthCam uses various models of Sony, Canon, and Nikon cameras purchased from B&H and Adorama.

42. That business (transactions) was exploited by Debtor and the Non-Party Conspirators to fund (through both monies and goods) and execute their fraudulent scheme.

43. Indeed, Debtor and the Non-Party Conspirators knowingly arranged and processed hundreds of false purchase orders and invoices for Sony, Canon, and Nikon cameras at EarthCam's expense and, in turn, unlawfully removed such goods from EarthCam's facility to reintroduce into the interstate market, including to resell to EarthCam the very same cameras stolen from its warehouse, and it already paid for.

44. To effectuate the scheme, Debtor and Dilkes created and/or caused to be created unnecessary and unwanted camera purchase orders on EarthCam's behalf in EarthCam's computerized inventory/accounting system.

45. These purchase orders did not follow the proper course of process under EarthCam's procedures.

8

46.     These manufactured purchase orders were then submitted to B&H and Adorama without authorization or approval from EarthCam's authorized representative.

47.     In turn, B&H and Adorama accepted and fulfilled those falsified purchase orders, shipped the cameras to EarthCam, and generated and transmitted invoices falsely identifying the cameras to EarthCam.

48.     As Controller, Debtor was responsible for processing the invoices for payment.

49.     Upon receipt of an invoice for the manufactured purchase order, Debtor assembled an invoice payment package and created a payment run within EarthCam's computerized financial system to process payment of the invoice.

50.     As part of the invoice payment package, particularly for those non-electronic payments, Debtor printed or cause to be printed, a check for the amounts invoiced by B&H and Adorama, attached the check to the invoice package for the associated purchase order and invoice, and submitted the package to EarthCam's chief executive officer so that he could sign the check(s).

51.     Thereafter, Debtor sent or caused to be sent the check to the retailer and/or supplier via the United States Postal Service ("USPS").

52.     After the purportedly purchased cameras arrived at EarthCam's warehouse, and in furtherance of the scheme, Dilkes unlawfully took the inventory, either by personally loading the inventory into his vehicle or instructing EarthCam warehouse employees to pack and load them into his vehicle, for the benefit of himself and Non-Party Co-Conspirators.

53.     DeVia, a non-authorized reseller of Nikon, Sony, and Canon cameras, would then purchase the stolen cameras at below market rate from Dilkes and thereafter sell them to B&H and Adorama.  B&H and Adorama replenished their inventory without the need to purchase from their manufacturers.

54. In his role as Controller, Debtor was in a position to prevent employees from wrongfully taking items from EarthCam. Instead, Debtor permitted and aided in the falsification of EarthCam's records.

55. The timing, recurrence, and unit amounts reflected on the manufactured purchase orders and the corresponding invoices should have raised concerns for Debtor if he was not involved in the scheme. Instead, Debtor utilized the fraudulent purchase orders to justify paying the invoices.

56. Debtor's termination raised concerns over the continued longevity of the scheme.

57. Indeed, Dilkes called a co-conspirator from B&H to advise that Vincent's termination may unmask the scheme because there would be no executive to aid in covering up the scheme.

58. The following is a summary of the scheme:

a. Step No. 1: Dilkes caused the preparation of false purchase orders for large numbers of unnecessary cameras and related merchandise, then processed those false purchase orders, and transmitted those false purchase orders via mail, facsimile and/or email to B&H and Adorama with the intention of diverting funds and merchandise at EarthCam's expense.

b. Step No. 2: B&H and Adorama knowingly accepted and fulfilled those false purchase orders, and shipped via either UPS, FEDEX, or USPS from their New York warehouses to EarthCam's New Jersey warehouse.

c. Step No. 3: B&H and Adorama knowingly generated invoices for the units of cameras and related merchandise falsely ordered, and mailed, faxed and/or emailed the invoices to EarthCam for payment.

d. <u>Step No. 4</u>: Debtor created payment runs within EarthCam's accounting system to facilitate EarthCam's payment of those false invoices (at market prices) from B&H and Adorama.

e. <u>Step No. 5</u>: Dilkes falsified EarthCam records to make it appear there was a legitimate reason (*e.g.*, "dispensing") that the cameras were not in the warehouse.

f. <u>Step No. 6</u>: Dilkes loaded, or caused to be loaded, into his vehicle the cameras delivered from B&H and Adorama, unlawfully removed the cameras from EarthCam's New Jersey warehouse, and, upon information and belief, transported the cameras across state lines to DeVia.

g. <u>Step No. 7</u>: DeVia purchased the stolen cameras from Dilkes at significantly less than market price, resold the cameras back to B&H and Adorama (or "distributors" at the direction of B&H and Adorama) at well-below market rate, and, upon information and belief, either shipped those purchased stolen cameras via UPS, FEDEX, or USPS or, transported those stolen cameras across state lines to B&H and Adorama.

h. <u>Step No. 8</u>: B&H and Adorama replenished their inventory without the need to purchase from their manufacturers, made the stolen cameras available for purchase, and offered and sold the stolen cameras to EarthCam and the general public and/or governmental agencies, as new and at market prices.

i. The process would begin again.

59. The fraudulent scheme resulted in a loss of $13,368,743.15.

11

## III.    Debtor's Arrest & Guilty Plea

60.    Upon learning of Debtor's personal embezzlement, EarthCam contacted law enforcement authorities.

61.    Amidst the criminal investigation, on April 25, 2023, Debtor commenced a wrongful discharge action against EarthCam in the Superior Court of New Jersey, Bergen County, under Docket No. BER-L-002166-23 ("NJ Civil State Case").  EarthCam answered, refuting the allegations, and counterclaimed for Debtor's embezzlement scheme as described hereinabove.  A true and accurate copy of the Answer to the Amended Complaint with Counterclaims is annexed hereto as Exhibit 2.

62.    On May 2, 2023, during a theft investigation, detectives from the Bergen County Prosecutor's Office's Special Investigation Squad and the Upper Saddle River Police Department executed a search warrant on Dilkes' vehicle at a Mahwah, New Jersey hotel.  The search revealed 58 Canon digital cameras valued over $100,000 that were stolen from EarthCam.  Dilkes was arrested at the scene.

63.    That same day, detectives and members of the Upper Saddle River Police Department also executed a search warrant on a business owned by DeVia in Linden, New Jersey, which revealed 156 digital Canon cameras that were also stolen from EarthCam.  DeVia was arrested at the business.

64.    Similarly, in or about October 2023, Debtor was arrested for engaging in theft against EarthCam and charged by the Bergen County Prosecutor's Office via Complaint-Warrant with embezzling more than $700,000 from EarthCam. A true and accurate copy of Complaint-Warrant No. W-2023-000447-0290 and associated Docket Sheet for *State of New Jersey v. Charles J. Vincent*, BER-23-001338, are annexed hereto as Exhibits 3 and 4, respectively.

12

65.     By June 2024, Debtor was indicted for first-degree money laundering, N.J.S.A. 2C:21-25B(2)(A); second-degree theft by deception, N.J.S.A. 2C:20-4(a); second-degree theft of movable property, N.J.S.A. 2C:20-3(a); and third-degree impersonation/theft of identity, N.J.S.A. 2C:21-17(a)(1) in connection with his embezzlement.

66.     Four days before the Petition Date, on or about May 9, 2025, Debtor entered a guilty plea to second-degree theft by deception.  A copy the Guilty Plea entered in *State of New Jersey v. Charles J. Vincent*, BER-23-001338, is annexed hereto as Exhibit 5.

67.     Debtor was represented by counsel during his guilty plea.

68.     Debtor's sentencing hearing is presently scheduled for September 2025.

## COUNT I
### COMMON LAW FRAUD/FRAUDULENT MISREPRESENTATION /FRAUDULENT INDUCEMENT

69.     Plaintiffs hereby repeat and incorporate by reference each and every allegation of the foregoing paragraphs of this Complaint as if set forth at length herein.

70.     Over the course of eight years, Debt paid himself salaries and bonuses unauthorized by EarthCam, made disbursements to himself with company funds to pay his personal expenses, and used EarthCam monies and property to fund a years-long fraudulent stolen property operation perpetuated on EarthCam.

71.     Between 2015 and 2022, Debtor, engaged in conduct with the intention of misleading EarthCam by wrongfully taking bonuses and other additional compensation that was never authorized.

72.     Between 2015 and 2022, Debtor, engaged in conduct with the intention of misleading VGG Holdings LLC and 650 East Crescent LLC by wrongfully using funds that belong to those companies to pay his personal expenses.

13

73.     Debtor knowingly prepared financial documents and records on Plaintiffs' behalf which mischaracterized and obscured the improper payments he made to himself in an effort to conceal same.

74.     Debtor misrepresented to Plaintiffs how company funds were spent and/or how employee income taxes were being withheld and reported to conceal his fraudulent conduct and enable him to continue to embezzle company money for his benefit.

75.     Between 2015 and 2023, Debtor participated in a scheme with the Non-Party Co-Conspirators involving the wrongful purchasing of cameras and camera-related merchandise that were never properly purchased by EarthCam, then re-purchasing those cameras and camera-related merchandise, and selling them to the general public and/or governmental agencies or back to EarthCam.

76.     Debtor participated in making or causing to make false entries in EarthCam's business records and system.

77.     Debtor created and/or caused to be created unnecessary and unwanted purchase orders for Canon, Sony, and/or Nikon cameras on EarthCam's behalf.

78.     Those manufactured purchase orders did not follow the proper course of process under EarthCam's procedures.

79.     For instance, Debtor initiated the scheme and submitted to the camera retailer co-conspirators purchase orders that were signed once despite EarthCam's procedure that required two EarthCam agents' signatures – one to review the order and the other to approve the order – before it is submitted to a camera retailer.

14

80.     Those manufactured purchase orders were then submitted to Debtor's non-party co-conspirators, B&H and Adorama, without authorization or approval from EarthCam's authorized representative.

81.     Once EarthCam received the purportedly purchased cameras, purchase orders numbers were handwritten onto invoices.

82.     Debtor utilized these fraudulent purchase orders to justify paying the invoices.

83.     To continue the fraudulent apparatus by misrepresenting that the camera transactions were proper, and induce EarthCam to pay for these cameras, Debtor utilized these fraudulent purchase orders to create payment packages and runs to process payment of the invoices associated with these manufactured purchase orders.

84.     As a result of the above, EarthCam was induced to order new cameras and related products based upon its reasonable reliance that prior orders were not cameras and equipment that were previously stolen from EarthCam.

85.     To that end, EarthCam relied on the appearance of a proper transaction and remitted payment to Debtor's non-party co-conspirators (camera retailers).

86.     Debtor participated in a scheme whereby he worked towards misleading EarthCam into purchasing cameras and camera-related merchandise that were not only unnecessary and excessive but stolen from its location by using false entries in EarthCam's electronic system.

87.     Some of the cameras and products purchased with EarthCam funds as part of this scheme to defraud EarthCam were as follows: Canon T6, Canon T7, and Canon T8.

88.     Debtor misled EarthCam by engaging in a scheme to defraud EarthCam of millions of dollars of products.

15

89.     Debtor received money and/or benefits as a result of his involvement in the scheme to defraud EarthCam out of cameras and other goods.

90.     By virtue of his role as Controller and employee, Debtor maintained a special relationship with Plaintiffs, which imposed upon him a duty to affirmatively disclose information relating to Plaintiffs, including his own breaches of fiduciary duty.

91.     Debtor acted with other Co-Conspirators to knowingly and intentionally falsify EarthCam's business records and purchase orders in order to wrongfully purchase cameras and camera-related merchandise and products that they would eventually steal from EarthCam and often sell them back to EarthCam for a profit.

92.     Debtor intended that Plaintiffs would rely upon his false representations and/or misleading omissions given his position as Controller and his long-term employment.  Each false or misleading representation and/or omission was made with an intent to defraud Plaintiffs.

93.     EarthCam justifiably relied on these falsified records, which prevented EarthCam from discovering the fraudulent scheme and which allowed Debtor to continue to issue unauthorized purchased orders for cameras and camera-related merchandise that EarthCam did not want or need.

94.     While EarthCam has been able to determine that some of its records must have been altered, the specifics of the falsified business records, including which records were modified and what information was altered, are exclusively within the knowledge of Debtor and other co-conspirators.

95.     The representations made by Debtor were false when made, with the specific intention that Plaintiffs rely on those representations to give Debtor sufficient time and opportunity to steal from Plaintiffs.

16

96.     Plaintiffs relied on those representations.

97.     Debtor's actions were willful, wanton, and made with intent to deceive.

98.     The acts and conduct of Debtor constitute fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny pursuant to 11 U.S.C. § 523(a)(4).

99.     As a result of these fraudulent acts, Plaintiffs have been damaged in an amount to be determined at trial, but not less than $14,249,907.80.

**WHEREFORE**, Plaintiffs demand judgment against the Debtor/Defendant for monetary damages in the sum of $14,249,907.80, together with such compensatory, consequential, and punitive damages as may be appropriate, and excepting such damages, or such portion thereof as the Court deems just, from discharge in this Bankruptcy Case or any future bankruptcy case filed by or against Debtor/Defendant, together with attorneys' fees, costs, and such other and further relief as the Court deems appropriate.

**COUNT II**
**FRAUDULENT CONCEALMENT**

100.     Plaintiffs hereby repeat and incorporate by reference each and every allegation of the foregoing paragraphs of this Complaint as if set forth at length herein.

101.     Debtor fraudulently concealed from Plaintiffs facts about which he had superior knowledge including but not limited to, Debtor's improper payments of a bonus and other compensation that was unauthorized, Debtor's improper use of company funds to pay his credit cards and personal expenses and Debtor's improper involvement in concealing the origin and source of the cameras and related merchandise marketed, ordered, sold, and delivered to EarthCam from 2015 through 2023, including that the cameras offered, sold and delivered were stolen cameras.

17

102.    Debtor's fraudulent concealed from EarthCam that payments were being made from EarthCam's account to pay B&H and Adorama for unapproved and unauthorized purchase orders and stolen cameras.

103.    Debtor had a duty to disclose complete and accurate information to Plaintiffs to whom he owes a duty of loyalty.

104.    Had Plaintiffs known the true facts regarding Debtor's fraudulent accounting practices, Plaintiffs would have immediately stopped the unauthorized payment of bonuses and personal expenses.

105.    Had EarthCam known the true facts regarding Debtor's fraudulent inventory and accounting practices, EarthCam would have not purchased the cameras and related merchandise.

106.    Debtor concealed the true nature and source of the payments and cameras to deceive EarthCam into buying cameras and related merchandise.

107.    Plaintiffs justifiably relied on Debtor's false representations and/or misleading omissions.

108.    As a result of Debtor's failure to disclose the true facts, Plaintiffs have suffered damages in an amount not less than $14,249,907.80.

**WHEREFORE**, Plaintiffs demand judgment against the Debtor/Defendant for monetary damages in the sum of $14,249,907.80 together with such compensatory, consequential, and punitive damages as may be appropriate, and excepting such damages, or such portion thereof as the Court deems just, from discharge in this Bankruptcy Case or any future bankruptcy case filed by or against Debtor/Defendant, together with attorneys' fees, costs, and such other and further relief as the Court deems appropriate.

## COUNT III
## AIDING AND ABETTING FRAUD

109. Plaintiffs hereby repeat and incorporate by reference each and every allegation of the foregoing paragraphs of this Complaint as if set forth at length herein.

110. Debtor was, at all times, acting within the scope of his employment.

111. As explained above, Debtor perpetuated a fraud on EarthCam in collusion with his non-party co-conspirators, Dilkes, B&H, Adorama, and DeVia.

112. Debtor had actual knowledge of that fraud or consciously avoided knowledge of that fraud.

113. Debtor actively provided substantial assistance and encouragement to the Non-Party Conspirators and their exploitation of EarthCam, through fraud, including:

   a. Ordering or causing to be ordered cameras and related merchandise utilizing EarthCam's funds,

   b. unlawfully removing or causing the unlawful removal of cameras and related merchandise delivered to EarthCam's warehouse;

   c. Offering and providing those cameras and related merchandise for fraudulent re-sale, and receiving compensation for the same;

   d. Causing remittance of payment for manufactured purchase orders and invoices and for cameras stolen from EarthCam; and

   e. Failing to undertake an adequate inquiry into the purchase orders and invoices.

114. Debtor had knowledge or avoided knowledge of the fraud because he utilized the manufactured purchase orders to justify and cause remittance of payment to his non-party co-conspirators for fraudulent invoices associated with the manufactured purchase orders.

19

115.    Debtor assisted in the fraud, by among other things, accepting and fulfilling unauthorized and unapproved purchase orders, including accepting purchase orders that were either unsigned or lacking the requisite two signatures from EarthCam representatives, purchasing the cameras and related merchandise, and introducing them back into the stream of commerce.

116.    Debtor's actions in facilitating and/or assisting and concealing the fraud proximately caused EarthCam to suffer damages in an amount no less than $13,368,743.15.

**WHEREFORE**, Plaintiffs demand judgment against the Debtor/Defendant for monetary damages in the sum of $13,368,743.15 together with such compensatory, consequential, and punitive damages as may be appropriate, and excepting such damages, or such portion thereof as the Court deems just, from discharge in this Bankruptcy Case or any future bankruptcy case filed by or against Debtor/Defendant, together with attorneys' fees, costs, and such other and further relief as the Court deems appropriate.

<u>**COUNT IV**</u>
**BREACH OF FIDUCIARY DUTY/DUTY OF LOYALTY**

117.    Plaintiffs hereby repeat and incorporate by reference each and every allegation of the foregoing paragraphs of this Complaint as if set forth at length herein.

118.    From September 2014 until March 10, 2023, Debtor was employed within Plaintiffs' accounting department and most recently served as EarthCam's Controller.

119.    Plaintiffs reposed their trust, confidence, and pecuniary interests in Debtor by, among other things, giving his duties and responsibilities over accounting and finances, including responsibility for accounts payable, payroll, withholding reporting, and responsibility for and access to all their financial records.

120.    Debtor, as former employees of EarthCam and as Controller respectively, had a fiduciary duty and/or duty of loyalty to Plaintiffs to act in the proper and best interest of Plaintiffs.

20

121. During his employment, Debtor acted in a way that failed to prioritize the interests of Plaintiffs for his own benefit.

122. Indeed, Debtor falsely represented himself as a loyal and trustworthy employee who was acting in Plaintiffs' best interest in order to gain Plaintiffs' trust and confidence.

123. Debtor breached his duty to EarthCam, VGG Holdings LLC and 650 East Crescent LLC by acting in a manner inconsistent with his duties, including, but not limited to, falsifying business records, using company funds to pay personal expenses, wrongfully ordering and taking cameras and other products that belong to EarthCam, and engaging in a scheme to re-sell stolen cameras and other products to EarthCam.

124. Debtor acted in a manner inconsistent with their duties and in a manner to harm Plaintiffs and enrich himself.

125. Debtor was also the subject of a Wage Garnishment Order entered by the New Jersey Superior Court.

126. Pursuant to the Order, EarthCam faithfully made payments every two weeks to Court Officer Rocco Sconzo in the aggregate amount of Seven Thousand Five-Hundred Seventy-Two Dollars and Forty Cents ($7,572.40), however, none of this money was ever withheld from Debtor's paycheck effectively resulting in Debtor's unlawful conversion of those funds.

127. Debtor exploited his position as Controller, abusing EarthCam's trust and confidence, so that while funds were in fact garnished as arranged by him, he did not arrange to have any corresponding funds withheld from his paycheck in a purposeful neglect of his duty with an intent to convert EarthCam's money for his own advantage.

128. As a result of the foregoing, Plaintiffs have been damaged in an amount not less than $14,249,907.80.

21

**WHEREFORE**, Plaintiffs demand judgment against Debtor for monetary damages in the sum of $14,249,907.80, together with such compensatory, consequential, and punitive damages as may be appropriate, and excepting such damages, or such portion thereof as the Court deems just, from discharge in this Bankruptcy Case or any future bankruptcy case filed by or against Debtor/Defendant, together with attorneys' fees, costs, and such other and further relief as the Court deems appropriate.

**COUNT V**
**BREACH OF CONTRACT**

129.    Plaintiffs hereby repeat and incorporate by reference each and every allegation of the foregoing paragraphs of this Complaint as if set forth at length herein.

130.    Debtor had a contractual obligation as an employee of EarthCam to act in the best interest of EarthCam, VGG Holdings LLC and 650 East Crescent LLC and to not wrongfully take money from those entities and use those funds for personal expenses.

131.    Debtor also was contractually obligated not to engage in any schemes that harm EarthCam, including but not limited to, a scheme whereby cameras and goods would be stolen from EarthCam and then re-sold to EarthCam.

132.    Debtor breached his duty to EarthCam, VGG Holdings LLC and 650 East Crescent LLC by causing and wrongfully taking unauthorized bonuses and overpayments from EarthCam, wrongfully using funds that belong to VGG Holdings LLC and 650 East Crescent LLC to pay personal expenses and by engaging in a scheme to steal cameras and other goods from EarthCam and then re-sell those stolen goods back to EarthCam.

133.    As the result of the foregoing, EarthCam, VGG Holdings LLC and 650 East Crescent LLC have been damaged in an amount to be determined at trial, but not less than $14,249,907.80.

22

**WHEREFORE**, Plaintiffs demand judgment against the Debtor/Defendant for monetary damages in the sum of $14,249,907.80, together with such compensatory, consequential, and punitive damages as may be appropriate, and excepting such damages, or such portion thereof as the Court deems just, from discharge in this Bankruptcy Case or any future bankruptcy case filed by or against Debtor/Defendant, together with attorneys' fees, costs, and such other and further relief as the Court deems appropriate.

**COUNT VI**
**BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING**

134.    Plaintiffs hereby repeat and incorporate by reference each and every allegation of the foregoing paragraphs of this Complaint as if set forth at length herein.

135.    The agreements at issue herein, as with all contracts, incorporate covenants of good faith and fair dealing.

136.    To the extent that any of the facts set forth above do not constitute a breach of Debtor's obligations, they constitute a violation of the covenant of good faith and fair dealing which has denied EarthCam the benefits and expectations of its agreements with Debtor's.

137.    Debtor violated his obligation of good faith and fair dealing by wrongfully taking money from EarthCam, VGG Holdings LLC and 650 East Crescent LLC, use funds for personal expenses and engaging in a camera theft scheme.

138.    Debtor was obligated not to actively seek to harm EarthCam, VGG Holdings LLC and 650 East Crescent LLC but his behavior and scheme did target EarthCam, VGG Holdings LLC and 650 East Crescent LLC to be harmed.

139.    As a direct and proximate result thereof, EarthCam, VGG Holdings LLC, and 650 East Crescent LLC are entitled to compensatory damages in an amount to be determined at trial, but not less than $14,249,907.80 and other relief.

**WHEREFORE**, Plaintiffs demand judgment against the Debtor for monetary damages in the sum of $14,249,907.80, together with such compensatory, consequential, and punitive damages as may be appropriate, and excepting such damages, or such portion thereof as the Court deems just, from discharge in this Bankruptcy Case or any future bankruptcy case filed by or against Debtor/Defendant, together with attorneys' fees, costs, and such other and further relief as the Court deems appropriate.

## COUNT VII
### CONVERSION

140. Plaintiffs hereby repeat and incorporate by reference each and every allegation of the foregoing paragraphs of this Complaint as if set forth at length herein.

141. Debtor came into possession of specific funds which were taken from Plaintiffs.

142. Debtor also wrongfully came into possession of the property of EarthCam, including but not limited to millions of dollars' worth of cameras, lenses, and other products.

143. Those products included but not limited to the following description of products Canon T6, Canon T7, Canon T8, Nikon cameras, and Sony Alpha cameras.

144. Debtor is responsible for converting EarthCam's designed funds and property and unlawfully by taking it or participating in its sale.

145. Debtor remains in possession of the funds taken from Plaintiffs.

146. EarthCam maintains title and right to the funds and property stolen by Debtor, as well as any assets purchased with the stolen money.

147. Debtor's actions have interfered with Plaintiffs' right of possession to Plaintiffs' property which has caused damages.

148.    Debtor has failed to return designated funds and the goods wrongfully taken from EarthCam, including but not limited to millions of dollars' worth of cameras, lenses, and other products.

149.    Any demand for the return of the goods wrongfully taken from EarthCam would have been futile, as Debtor knew that he had no right to the goods.

150.    Plaintiffs have an immediate superior right of possession of the designated funds and EarthCam has an immediate superior right of possession of the goods that were wrongfully taken by Debtor.

151.    Debtor has converted those designed funds and goods by exercising unauthorized dominion over them to the exclusion of EarthCam's rights.

152.    The actions of Debtor were intentional and unlawful.

153.    By maintaining possession of Plaintiffs' money and/or assets, Debtor has exercised unlawful dominion and control over Plaintiffs' property and thereby unlawfully converted it to his own use, benefit, and enjoyment.

154.    The value of the property unlawfully converted by Debtor is believed to be in the amount not less than $14,249,907.80.

**WHEREFORE**, Plaintiffs demand judgment against the Debtor/Defendant for monetary damages in the sum of $14,249,907.80, together with such compensatory, consequential, and punitive damages as may be appropriate, and excepting such damages, or such portion thereof as the Court deems just, from discharge in this Bankruptcy Case or any future bankruptcy case filed by or against Debtor/Defendant, together with attorneys' fees, costs, and such other and further relief as the Court deems appropriate.

## COUNT VIII
### UNJUST ENRICHMENT

155. Plaintiffs hereby repeat and incorporate by reference each and every allegation of the foregoing paragraphs of this Complaint as if set forth at length herein.

156. Debtor was unjustly enriched by paying himself unauthorized bonuses and compensation, using certain company funds to pay his credit cards and personal expenses and by participating in a scheme to steal cameras from EarthCam and then re-sell stolen cameras to EarthCam.

157. Debtor received benefits at Plaintiffs' expense that under the circumstances made Debtor's retention of those benefits unjust and it would be unjust for Debtor to be permitted to retain those benefits.

158. Debtor is liable to Plaintiffs for restitution of all amounts by which he was unjustly enriched at the expense of Plaintiffs, in an amount not less than $14,249,907.80, plus interest, plus attorney's fees and cost of suit on the amount due and owing.

**WHEREFORE**, Plaintiffs demand judgment against the Debtor/Defendant for monetary damages in the sum of $14,249,907.80, together with such compensatory, consequential, and punitive damages as may be appropriate, and excepting such damages, or such portion thereof as the Court deems just, from discharge in this Bankruptcy Case or any future bankruptcy case filed by or against Debtor/Defendant, together with attorneys' fees, costs, and such other and further relief as the Court deems appropriate.

## COUNT IX
### VIOLATION OF THE FEDERAL CIVIL RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT

159. Plaintiffs hereby repeat and incorporate by reference each and every allegation of the foregoing paragraphs of this Complaint as if set forth at length herein.

160.     Debtor and co-conspirators violated RICO and EarthCam was injured as a result.

161.     Debtor and co-conspirators are "persons" under 18 U.S.C. § 1961(3).

162.     Debtor violated RICO by virtue of his membership in an enterprise with Non-Party Co-Conspirators, within the meaning of 18 U.S.C. § 1961(4), and conducting or participating, directly or indirectly, in that enterprise through a pattern of racketeering activity.

163.     Debtor was part of an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

164.     In the alternative, the association-in-fact of Debtor and the Non-Party Conspirators is an "enterprise" within the meaning of 18 U.S.C. § 1961(4), and Debtor violated RICO by associating with the Enterprise and conducting or participating, directly or indirectly, in that association-in-fact enterprise through a pattern of racketeering activity.

165.     Debtor acted with the knowledge and intent required to violate the statutes identified as racketeering activity.

166.     The members of the scheme and enterprise, namely B&H Foto & Electronics Corp., BH Photo Video Inc, Adorama Camera, Inc., Adorama Inc., Adorama Shipping, Inc., Charles Dilkes, Charles Vincent, Edwin DeVia, and Yosef Leaf, shared the common purpose of obtaining pecuniary gain through the unlawful acquisition and sale of stolen cameras and goods.

167.     The scheme affected interstate commerce because the stolen goods and ill-gotten funds were transferred across state lines.

168.     The enterprises included at least the following persons, businesses, or other legal entities that played the following discrete and well-defined roles in this illegal organization and scheme:

      a.  Debtor had the role of maintaining the relationship between B&H, Adorama, and EarthCam, and permitting Dilkes to falsify business records and assisting

27

him in that effort.  Debtor would also make and cause payments to be made from EarthCam and submitted to B&H and Adorama via USPS.

b. Dilkes assisted the fraud scheme by ordering and paying for goods that would be later stolen or goods which had already been purchased; unlawfully removing cameras and goods from EarthCam's warehouse. Dilkes also falsified business records in furtherance of the scheme.

c. DeVia was the intermediary fence used in the scheme.  He purchased the stolen cameras and related goods from Dilkes and resold them to B&H and Adorama to hide the source of those stolen goods.  DeVia also utilized John Doe 1-100 and/or ABC Companies 1-100 to serve as a fence and distribute or cause distribution of stolen cameras back into the supply chain for B&H and Adorama to continue the fraudulent scheme and/or to the general public.

d. B&H and Adorama had the role of selling the stolen cameras to EarthCam or the public and/or governmental agencies, generating and transmitting invoices for payment pursuant to manufactured purchase orders, and collecting money from EarthCam for these stolen goods.  B&H and Adorama also purchased the stolen cameras and goods from DeVia.

169.    At all relevant times, the enterprise was engaged in trade or commerce in activities affecting trade or commerce in the States of New Jersey and New York.

170.    Debtor, along with the other members of the enterprises, participated directly and indirectly in the operation and management of the enterprises in New Jersey and in the conduct of the enterprises' affairs in New Jersey through a pattern of racketeering by engaging in at least two related incidents of racketeering activity within ten years in connection with their scheme to

28

defraud EarthCam and/or the public at large and/or governmental agencies as set forth herein in violation of 18 U.S.C. § 1962(c).

171.   These acts were done intentionally and knowingly with the specific intent to advance the scheme.

172.   Debtor and his Non-Party Conspirators, participated in the enterprise by engaging in activities, both directly and indirectly, that affect trade and commerce through a pattern of racketeering in violation of 18 U.S.C. § 1962.

173.   Debtor and his Non-Party Conspirators engaged in acts, both directly and indirectly, in furtherance of the enterprises in the States of New Jersey and New York by falsifying business records, falsifying purchase orders, stealing goods from EarthCam, and re-selling those goods back to EarthCam and/or the public at large and/or governmental agencies.

174.   The pattern of racketeering activity engaged in consisted of the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343.

175.   The predicate acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 began no later than 2015 and continued through no earlier than 2023.

176.   Debtor acting individually and as part of the enterprises, devised the scheme in order to defraud and to obtain money or property by means of false or fraudulent pretenses and representations. Debtor's participation was crucial to the racketeering activity.

177.   Debtor and his Non-Party Conspirators made substantial use of interstate mails and wires to conceive, discuss, plan, implement, and conceal their fraudulent schemes.

178.   Debtor engaged in various instances of fraudulent representations and omissions and under false pretenses by using email and/or mail in furtherance of the scheme or apparatus to defraud EarthCam.

179. For example, Debtor participated in sending and receiving purchase orders that he knew EarthCam never authorized or approved.

180. Debtor also created false business entries into EarthCam's inventory system to conceal the fact that cameras and goods were stolen.

181. The multiple occurrences of mail and wire fraud were all committed by Debtor and his Non-Party Conspirators by using US mail and other means to send stolen cameras and goods between New York and New Jersey.

182. For instance, and upon information and belief, the wire fraud occurred when Debtor used wires and checks to pay each other for the goods that were stolen from EarthCam.

183. Each use of mail and wires by Debtor in furtherance of the stolen property operation and scheme is cognizable as mail and wire fraud – even in connection with "innocent or innocuous" communications.

184. Debtor transported, transmitted, and transferred in interstate money, of the value of $5,000 or more, knowing same to have been stolen, converted and taken by fraud, in violation of 18 U.S.C. §§ 2314 and 2315.

185. The predicate acts of the transportation and receipt of stolen money in violation of 18 U.S.C. §§ 2314 and 2315 began no later than 2015 and continued through no earlier than 2023.

186. Debtor participated in hiding the origins of the stolen goods by fencing those goods illegally.

187. Debtor and his Non-Party Conspirators acted knowingly in receiving stolen goods to then sell them later for profit.

188.   Debtor and his Non-Party Conspirators received monies exceeding $5,000 as part of the scheme, which was stolen, converted or taken by fraud from EarthCam, in violation of 18 U.S.C. § 2315.

189.   From 2015 through 2023, Debtor and his Non-Party Conspirators engaged in the transfer of funds described herein which were in violation of the anti-money laundering statute, 18 U.S.C. § 1956 (a)(1).

190.   From 2015 through 2023, Debtor and his Non-Party Conspirators engaged in activities involving multiple transactions totaling over $500,000.00 with the intent to conceal or disguise the nature, location, source, ownership or the control of the proceeds of the theft of EarthCam's funds and goods and to avoid reporting requirements under State or Federal Law.

191.   Specifically, Debtor and his Non-Party Conspirators participated and used an intermediary, to hide the fact that the true source of the funds was from stolen goods.

192.   The predicate acts of money laundering were knowing and purposefully done in furtherance of actual or specified unlawful activities structured to disguise the origin of the funds generated as a result of the scheme to deprive EarthCam of cameras, goods and money in connection with 18 U.S.C. § 1341 (Relating to mail fraud) and 18 U.S.C. § 1343 (Relating to wire fraud).

193.   The scheme began no later than 2015 having continued through 2023, with Debtor being involved in the fraud since at least 2015.

194.   Debtor also engaged in a series of related predicates extending over a substantial period of time, namely from 2015 to 2023.

195.   The nature of the actions of the scheme involve activity that by its nature projects into the future with a threat of repetition.

196.    The predicate acts of money laundering in violation of 18 U.S.C. § 1956 began no later than 2015 and continued through no earlier than 2023.

197.    The multiple occurrences of money laundering were committed by Debtor and his Non-Party Conspirators.

198.    The scheme could not have occurred without the predicate acts of mail and wire fraud since the stolen goods could not have been shipped without violating 18 U.S.C. §§ 1341 and 1343.  In addition, the ill-gotten funds could not have been acquired without violating 18 U.S.C. §§ 1341 and 1343.  For instance, given the large quality of goods being stolen, the scheme required the use of checks and wires to transfer ill-gotten funds amongst the co-conspirators.

199.    The scheme could not have occurred without the predicate acts of transportation and receipt of stolen money in violation of 18 U.S.C. §§ 2314 and 2315 because the scheme involved the movement of funds and goods that were stolen across state lines.

200.    The scheme could not have occurred without the predicate acts of money laundering in violation of 18 U.S.C. § 1956 because the source of the funds needed to be disguised to further the artifice to defraud.

201.    There was no legitimate business reason for engaging in the shipment of goods and cameras that were stolen from EarthCam but were for the sole purpose of defrauding EarthCam and other customers.

202.    The scheme has numerous victims including EarthCam, innocent customers of B&H Foto & Electronics Corp., BH Photo Video Inc, Adorama Camera, Inc., Adorama Inc., and Adorama Shipping, Inc. that purchased and received stolen goods.

203.    The number of racketeering activities was vast, with at least one predicate act of mail and wire fraud, transportation and receipt of stolen money, and money laundering associated with thousands of stolen cameras and goods involved in the scheme.

204.    Regarding the scheme, no fewer than 1,000 occurrences of mail and wire fraud in violation of 18 U.S.C. §§ 1314 and 1343 that begun no later than 2015 and continued through 2023.

205.    Regarding the scheme, no fewer than 1,000 of occurrences of transportation and receipt of stolen money in violation of 18 U.S.C. §§ 2314 and 2315 that began no later than 2015 and continued through no earlier than 2023.

206.    The multiple occurrences of transportation and receipt of stolen money were all committed by Debtor and his Non-Party Conspirators.

207.    In regard to the scheme, no fewer than 1,000 of occurrences of money laundering in violation of 18 U.S.C. § 1956 that began no later than 2015 and continued through no earlier than 2023.

208.    Debtor benefited from the scheme by Dilkes remaining silent while he stole money from EarthCam by paying himself large and unauthorized bonuses.

209.    For instance, Debtor worked with others to mislead EarthCam into believing that it was purchasing cameras and other goods that were not stolen.

210.    The acts of racketeering committed by Debtor are interrelated by distinguishing characteristics and are not isolated incidents, they involve identical or substantially similar methods of commission, identical or substantially similar types of misrepresentations and omissions, the same or similar benefit to Debtor and the Non-Party Conspirators (e.g., pecuniary

gain), the same or similar injuries to EarthCam, and the same or similar efforts by Debtor and the Non-Party Conspirators to conceal their misconduct.

211.    The scheme caused injury to EarthCam's business or property under 18 U.S.C. § 1964(c).

212.    As a direct and proximate result of these predicate acts, EarthCam has been damaged and injured.

213.    The actions of Debtor and his Non-Party Conspirators constitute Civil Racketeering under the Federal RICO Act.

214.    EarthCam has been directly and proximately harmed in its business and property by the predicate acts of racketeering committed by Debtor in an amount not less than thirteen million dollars ($13,000,000.00).

215.    Accordingly, EarthCam seeks an award of damages in compensation for the loss of more than thirteen million dollars ($13,000,000.00) representing monies and services obtained by fraud.

216.    As the result of the foregoing, EarthCam has been damaged in an amount not less than Thirteen Million Dollars ($13,000,000.00).

217.    In addition, EarthCam seeks an award of three times the damages it sustained against Debtor together with recovery of reasonable attorneys' fees and costs of investigation and litigation as well as any other relief authorized by statute.

**WHEREFORE**, Plaintiffs demand judgment against the Debtor/Defendant for monetary damages in the sum of Thirteen Million Dollars $13,000,000.00, together with such compensatory, consequential, and punitive damages, treble damages as may be appropriate, and excepting such damages, or such portion thereof as the Court deems just, from discharge in this Bankruptcy Case

34

or any future bankruptcy case filed by or against Debtor/Defendant, together with attorneys' fees, costs, and such other and further relief as the Court deems appropriate.

**<u>COUNT X</u>**
**CONSPIRACY TO VIOLATE THE FEDERAL CIVIL RACKETEER INFLUENCED
AND CORRUPT ORGANIZATION ACT, 18 U.S.C. § 1962(d)**

218.    Plaintiffs hereby repeat and incorporate by reference each and every allegation of the foregoing paragraphs of this Complaint as if set forth at length herein.

219.    Starting around 2015, Debtor and his Non-Party Conspirators each agreed to jointly participate together in a scheme to wrongfully violate the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961.

220.    Debtor had been employed by or associated with an enterprise engaged in activities that affect trade and commerce and conducted and participated in the activities, both directly and indirectly, in the conduct of the enterprises' affairs through a pattern of racketeering in the State of New Jersey and State of New York by improperly engaging in the falsification of business records, the falsification of purchase orders, the stealing of goods from EarthCam, and the re-sale of those goods back to EarthCam and/or the public at large and/or governmental agencies.

221.    Debtor and his Non-Party Conspirators conspired with each other to engage in fraudulent representations and omissions and under false pretenses as part of the scheme to defraud set forth herein. Namely, Debtor and nearly all Co-Conspirators needed to participate together to hide the fact that they were stealing cameras and camera related good from EarthCam and then re-selling them to EarthCam or selling stolen goods to the public at large and/or governmental agencies.

35

222.    Debtor and his Non-Party Conspirators engaged in planning and has a specific purpose within the conspiracy, namely, to engage in the stealing of cameras and camera related products and the movement of those products across state lines.

223.    Debtor and his Non-Party Conspirators reached an agreement with each other to participate in the wrongful stealing of cameras and camera-related merchandise from EarthCam and then they participated in the selling of those stolen goods.

224.    Debtor and his Non-Party Conspirators were each an individual enterprise and collectively were a group associated in fact that formed an enterprise.

225.    The individual enterprises of Debtor and his Non-Party Conspirators each were employed by and associated with the enterprises.

226.    In furtherance of this conspiracy, Debtor and his Non-Party Conspirators falsified business records and purchase orders, and purchased and sold/re-sold stolen goods.

227.    Debtor and his Non-Party Conspirators used a scheme to try and hide the origins of the stolen goods by fencing those goods illegally.

228.    Debtor and his Non-Party Conspirators each purposely and knowingly participated directly and indirectly in the operation and management of the enterprises in New Jersey and New York and in the conduct of the enterprises' affairs in New Jersey, New York, and elsewhere.

229.    Debtor and his Non-Party Conspirators conspired to participate directly and indirectly in the operation and management of the enterprises in New Jersey and/or New York and in the conduct of the enterprises' affairs in New Jersey and/or New York through a pattern of racketeering by engaging in at least two related incidents of racketeering activity within ten years in connection with their scheme to defraud EarthCam and/or the public at large and/or governmental agencies as set forth herein.

230. Debtor and his Non-Party Conspirators conspired to engage in incidents of racketeering activity by, among other thing, making fraudulent representations to customers about the origins of the goods they were selling and receiving payments for stolen goods through the mail and wires.

231. Debtor and his Non-Party Conspirators conspired to engage in incidents of racketeering activity by using various entities and individuals that would engage in a pattern of conduct to wrongfully take cameras, lenses, and other products.

232. The mechanics of the scheme detailed above and the number of moving parts, including the falsification of business records across numerous entities and the coordination required of Debtor and his Non-Party Conspirators to repeatedly resell the stolen cameras and camera-related merchandise back to EarthCam demonstrate that Debtor and Co-Conspirators must have known about and agreed to participate in the scheme.

233. The actions of the Debtor and his Non-Party Conspirators, taken in the furtherance of the scheme and the conspiracy, constitute Civil Racketeering under the Federal RICO Act.

234. In violation of 18 U.S.C. § 1962(d), Debtor and his Non-Party Conspirators knowingly, willfully, and unlawfully conspired to facilitate the scheme, which included operating and conducting the RICO enterprises outlined above through a pattern of racketeering activity.

235. The conspiracy commenced approximately in 2015 and was on-going until 2023. The full extent of the conspiracy has not yet been uncovered.

236. The conspiracy's purpose was to steal EarthCam's cameras and camera-related merchandise and then re-sell those goods to EarthCam or sell them to the public or governmental agencies including agencies that are part of the federal government or with federal government funds, for profit of the enterprise.

237. Debtor and his Non-Party Conspirators all conspired to steal the cameras and camera-related merchandise. Each of the co-conspirators were aware of the nature and scope of the overall scheme and conspiracy.

238. Each of Debtor and Co-Conspirators committed at least one (and, in reality, many) overt acts in furtherance of the conspiracy, including predicate acts of racketeering described above.

239. Even if some of the co-conspirators did not agree to harm EarthCam specifically, the purpose of their acts to advance the overall object of the conspiracy and to harm EarthCam, was a reasonably foreseeable consequence of the conspiracy and their actions, given they knew that cameras and camera-related merchandise were being stolen from EarthCam.

240. Upon information and belief, Debtor and his Non-Party Conspirators have engaged in this scheme and have stolen products from other businesses and sold those products to the public or other businesses and/or governmental agencies.

241. EarthCam has been directly and proximately injured in its business and property by the predicate acts of the racketeering committed by Debtor and his Non-Party Conspirators in furtherance of the conspiracy in violation of 18 U.S.C. § 1962(d) in an amount which exceeds thirteen million dollars ($13,000,000.00).

242. Without the illegal relationship between Debtor and his Non-Party Conspirators, the scheme could not have occurred, and a large number of cameras and camera-related merchandise could not have been taken and re-sold.

243. EarthCam seeks an award of damages against Debtor, in compensation for amount other things, thirteen million dollars ($13,000,000.00) that was obtained through fraud from EarthCam.

244.    EarthCam seeks an award of three times the damages sustained against Debtor.

245.    As the result of the foregoing, EarthCam has been damaged in an amount not less than Thirteen Million Dollars ($13,000,000.00).

246.    EarthCam seeks the recovery of reasonable attorney's fees and costs of the investigation and litigation, as well as other relief as authorized by statute.

**WHEREFORE**, Plaintiffs demand judgment against the Debtor/Defendant for monetary damages in the sum of Thirteen Million Dollars $13,000,000.00, together with such compensatory, consequential, and punitive damages, treble damages as may be appropriate, and excepting such damages, or such portion thereof as the Court deems just, from discharge in this Bankruptcy Case or any future bankruptcy case filed by or against Debtor/Defendant, together with attorneys' fees, costs, and such other and further relief as the Court deems appropriate.

## COUNT XI
## CIVIL CONSPIRACY

247.    Plaintiffs hereby repeat and incorporate by reference each and every allegation of the foregoing paragraphs of this Complaint as if set forth at length herein.

248.    Starting around 2015 and ending in 2023, Debtor along with his Non-Party Conspirators concocted, agreed to, and participated together in a scheme to wrongfully commit civil and criminal acts.

249.    Debtor and Co-Conspirators agreed and acted together to defraud EarthCam by wrongfully participating in a scheme to improperly cause EarthCam to order large numbers of cameras and camera-related merchandise and then wrongfully steal the cameras and camera-related merchandise from EarthCam's inventory, and thereafter, often wrongfully re-sell the stolen cameras and camera-related merchandise back to EarthCam.

250.    Debtor and Co-Conspirators acted together and jointly agreed to make and/or cause to be made, false entries and have fraudulent purchase orders submitted to have EarthCam over-purchase consumer cameras and camera-related merchandise which were later stolen.

251.    Debtor and Co-Conspirators knowingly and jointly agreed to engage in a fraudulent scheme to purchase and sell stolen cameras, lenses, and products in order to defraud EarthCam and the general public and/or governmental agencies.

252.    EarthCam has been damaged by the conspiracy, suffering losses of over Thirteen Million Dollars ($13,000,000.00).

253.    Debtor and Co-Conspirators acted in concert and agreed to commit unlawful acts, including fraud and violations of the Federal and New Jersey Civil RICO statute by engaging in a pattern of misconduct.

254.    In facilitating this agreement among Debtor and Co-Conspirators, they, among other things, wrongfully stole cameras and camera-related merchandise, and resold them to EarthCam or sold them to the general public and/or governmental agencies as new cameras and camera-related merchandise from the manufacturers.

255.    EarthCam has suffered harm and damages in an amount to be determined at trial, but not less than Thirteen Million Dollars ($13,000,000.00).

**WHEREFORE**, Plaintiffs demand judgment against the Debtor/Defendant for monetary damages in the sum of Thirteen Million Dollars $13,000,000.00, together with such compensatory, consequential, and punitive damages as may be appropriate, and excepting such damages, or such portion thereof as the Court deems just, from discharge in this Bankruptcy Case or any future bankruptcy case filed by or against Debtor/Defendant, together with attorneys' fees, costs, and such other and further relief as the Court deems appropriate.

## COUNT XII
### VIOLATION OF THE NEW JERSEY CIVIL RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT

256. Plaintiffs hereby repeat and incorporate by reference each and every allegation of the foregoing paragraphs of this Complaint as if set forth at length herein.

257. It is unlawful under N.J.S.A. 2C:41-2(c) for any person associated with any enterprise, the activities which affect trade or commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprises' affairs through a pattern of racketeering.

258. EarthCam is a "person" within the meaning of N.J.S.A. 2C:41-1.

259. Certain Co-Conspirators are corporate entities, and therefore "persons" under N.J.S.A. 2C:41-1(b).

260. Debtor and certain Co-Conspirators are "persons" under N.J.S.A. 2C:41-1(b).

261. Debtor and Co-Conspirators are an "enterprise" within the meaning of N.J.S.A. 2C:41-1(c).

262. In the alternative, the association of Debtor and Co-Conspirators is an "enterprise" within the meaning of N.J.S.A. 2C:41-1(c).

263. In the alternative, the association of Debtor and Co-Conspirators is an "enterprise" within the meaning of N.J.S.A. 2C:41-1(c).

264. In the alternative, the association-in-fact of Debtor and Co-Conspirators is an "enterprise" N.J.S.A. 2C:41-1(c).

265. The members of the scheme, namely Debtor and Co-Conspirators all had specific roles in the illegal organization.

266. Debtor had the role of maintaining the relationship between B&H, Adorama, and EarthCam, and permitting Dilkes to falsify business records and assisting him in that effort. Debtor

41

also would make or cause to be made payments from EarthCam's account and would submit payments to B&H and Adorama via USPS.

267.   The enterprise had an unlawful purpose to acquire and sell stolen cameras and goods for economic gain.

268.   The scheme affected interstate commerce because the stolen goods and ill-gotten funds were transferred across state lines between New York and New Jersey.

269.   Debtor and Co-Conspirators have participated directly and indirectly in the operation and management of the enterprises in New Jersey and in the conduct of the enterprises' affairs in New Jersey through a pattern of racketeering by engaging in at least two related incidents of racketeering activity within ten years in connection with their scheme to defraud EarthCam and/or the public at large and/or governmental agencies as set forth herein in violation of 18 U.S.C. § 1962(c) and N.J.S.A. 2C:41-1(d).

270.   These acts were done intentionally and knowingly with the specific intent to advance the scheme.

271.   Debtor and Co-Conspirators have participated in the enterprise by engaging in activities, both directly and indirectly, that affect trade and commerce through a pattern of racketeering in violation of 18 U.S.C. § 1962 and N.J.S.A. 2C:41-2.

272.   B Debtor and Co-Conspirators engaged in acts, both directly and indirectly, in furtherance of the enterprise in the States of New Jersey and New York by falsifying business records, falsifying purchase orders, stealing goods from EarthCam, and re-selling those goods back to EarthCam and/or the public at large and/or governmental agencies.

273.   The pattern of racketeering activity engaged in by Debtor and Co-Conspirators consisted of the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343.

274. The predicate acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 began no later than 2015 and continued through no earlier than 2023.

275. The predicate acts of mail and wire fraud in violation of multiple New Jersey statutes including New Jersey's theft by deception statute (N.J.S.A. 2C:20-3 and 4, et seq.) and New Jersey's money laundering statute (N.J.S.A. 2C:21-25), receiving stolen property (N.J.S.A. 2C:20-7)began no later than 2015 and continued through no earlier than 2023.

276. There are similar criminal statutes in New York that apply to the actions of B Debtor and Co-Conspirators such as grand larceny in the first degree (NY Penal Law § 155.42), criminal possession of stolen property in the first degree (New York Penal Law 165.54) and money laundering in the first degree (NY Penal Law § 470.20(2)(b)).

277. Debtor and Co-Conspirators acting individually and as part of the enterprises, devised the scheme in order to defraud and to obtain money or property by means of false or fraudulent pretenses and representations. Each Debtor and Co-Conspirators' participation was crucial to the racketeering activity.

278. As explained in detail above, Debtor and Co-Conspirators have engaged in various instances of fraudulent representations and omissions and under false pretenses by using email and/or mail in furtherance of the scheme or apparatus to defraud EarthCam.

279. Upon information and belief, there are several emailed demonstrating that B&H Foto & Electronics Corp., BH Photo Video Inc, Adorama Camera, Inc., Adorama Inc., Adorama Shipping, Inc were knowingly working together to further scheme.

280. The multiple occurrences of mail and wire fraud were all committed by Debtor and Co-Conspirators by using US mail and other means to send stolen cameras and goods between New York and New Jersey.

281.    Debtor and Co-Conspirators would transport and receive stolen money in violation of 18 U.S.C. §§ 2314 and 2315.

282.    The predicate acts of the transportation and receipt of stolen money in violation of 18 U.S.C. §§ 2314 and 2315 and New Jersey and New York laws on possessing stolen property in violation of New York Penal Law 165.54 and N.J.S.A. 2C:20-7 and any lessor included offenses. began no later than 2015 and continued through no earlier than 2023.

283.    Debtor and Co-Conspirators caused over one million dollars of goods to be stolen by deception in violation of N.J.S.A. 2C:20-3 and 4, et seq. and NY Penal Law § 155.42 and any lessor included offenses.

284.    From 2015 through 2023, Debtor and Co-Conspirators engaged in the transfer of funds described herein which were in violation of the New York and New Jersey anti-money laundering statutes NY Penal Law § 470.20(2)(b) and N.J.S.A. 2C:21-25 and any lessor included offenses.

285.    Debtor and Co-Conspirators transported or caused to be transported as part of the scheme, in interstate or foreign commerce, money having an aggregate value exceeding $5,000, which was stolen, converted or acquired by fraud from EarthCam in violation of 18 U.S.C. § 2314.

286.    Debtor and Co-Conspirators used or caused Edwin DeVia and/or John Doe 1-100 in tandem with ABC Companies 1-100, to hide the origins of the stolen goods by fencing those goods illegally.

287.    Debtor and Co-Conspirators transported or caused to be transported as part of the scheme, in interstate or foreign commerce, stolen money, having an aggregate value exceeding $5,000, converted or acquired by fraud from EarthCam in violation of 18 U.S.C. § 2314.

288. Debtor and Co-Conspirators received monies exceeding $5,000.00 as part of the scheme, which was stolen, converted or taken by fraud from EarthCam, in violation of 18 U.S.C. § 2315.

289. From 2015 through 2023, Debtor and Co-Conspirators engaged in the transfer of funds described herein which were in violation of the anti-money laundering statute, 18 U.S.C. § 1956 (a)(1).

290. From 2015 through 2023, Debtor and Co-Conspirators engaged in activities involving multiple transactions totaling over $500,000.00 with the intent to conceal or disguise the nature, location, source , ownership or the control of the proceeds of the theft of EarthCam's funds and goods and to avoid reporting requirements under State or Federal Law.

291. Specifically, Debtor and Co-Conspirators as an intermediary, to hide the fact that the true source of the funds was from stolen goods.

292. The predicate acts of money laundering were knowing and purposefully done in furtherance of actual or specified unlawful activities structured to disguise the origin of the funds generated as a result of the scheme to deprive EarthCam of cameras, goods and money in connection with 18 U.S.C. § 1341 (Relating to mail fraud) and 18 U.S.C. § 1343 (Relating to wire fraud).

293. Debtor and Co-Conspirators also engaged in a series of related predicates extending over a substantial period of time, namely from 2015 to 2023.

294. The nature of the actions of B Debtor and Co-Conspirators' scheme involve activity that by its nature projects into the future with a threat of repetition.

295.    The predicate acts of money laundering in violation of 18 U.S.C. § 1956, NY Penal Law § 470.20(2)(b) and N.J.S.A. 2C:21-25 and any lessor included offenses began no later than 2015 and continued through no earlier than 2023.

296.    The multiple occurrences of money laundering were all committed by B& Debtor and Co-Conspirators.

297.    The scheme could not have occurred without the predicate acts of mail and wire fraud since the stolen goods could not have been shipped without violating 18 U.S.C. §§ 1341 and 1343, New York and New Jersey criminal possession of stolen property, New Jersey theft by deception and New York grand larceny and New Jersey Criminal Conspiracy (N.J.S.A. 2C:5-2) and New York Criminal in the Fourth Degree (PL 105.10) and any lessor included offenses.  In addition, the ill-gotten funds could not have been acquired without violating 18 USC §§ 1341 and 1343.

298.    The scheme could not have occurred without the predicate acts of transportation and receipt of stolen money in violation of 18 U.S.C. §§ 2314 and 2315 because the scheme involved the movement of funds and goods that were stolen across state lines.

299.    The scheme could not have occurred without the predicate acts of money laundering in violation of 18 U.S.C. § 1956, NY Penal Law § 470.20(2)(b) and N.J.S.A. 2C:21-25 and any lessor included offenses, because the source of the funds needed to be disguised to further the artifice to defraud.

300.    Debtor and Co-Conspirators were collecting unlawful debts from EarthCam because the scheme involved EarthCam paying multiple times for the same cameras and goods.

301.    There was no legitimate business reason for engaging in the shipment of goods and cameras and camera-related merchandise that were stolen from EarthCam but were for the sole purpose of defrauding EarthCam and other customers.

302.    The scheme has numerous victims including EarthCam, innocent customers that purchased and received stolen goods.

303.    The number of racketeering activities was vast, with at least one predicate act of mail and wire fraud, transportation and receipt of stolen money, and money laundering associated with thousands of stolen cameras and camera-related merchandise involved in the scheme.

304.    In regard to the scheme, no fewer than 1,000 occurrences of mail and wire fraud in violation of 18 U.S.C. §§ 1314 and 1343 that begun no later than 2015 and continued through 2023.

305.    In regard to the scheme, no fewer than 1,000 of occurrences of transportation and receipt of stolen money in violation of 18 U.S.C. §§ 2314 and 2315 that began no later than 2015 and continued through no earlier than 2023.

306.    The multiple occurrences of transportation and receipt of stolen money all committed by Debtor and Co-Conspirators wrongfully charged EarthCam and received payment for goods that were eventually stolen.

307.    In regard to the scheme, no fewer than 1,000 of occurrences of money laundering in violation of 18 U.S.C. § 1956 that began no later than 2015 and continued through no earlier than 2023.

308.    Debtor benefited from the scheme by Charles Dilkes remaining silent while he stole money from EarthCam by paying himself large and unauthorized bonuses.

47

309.    The scheme caused injury to EarthCam's business or property within the meaning of N.J.S.A. 2C:41-4(c) as a consequence of the foregoing violations of N.J.S.A. 2C:41-21(c)..

310.    As a direct and proximate result of these predicate acts, Debtor and Co-Conspirators have injured and damaged EarthCam.

311.    In addition to damaging and injuring EarthCam, Debtor and Co-Conspirators have directly or indirectly sold the stolen cameras and camera-related merchandise to the public and/or government entities while falsely claiming that the cameras and camera-related merchandise were new, in turn overcharging them and voiding the warranties on the cameras and camera-related merchandise.

312.    The actions of Debtor and Co-Conspirators constitute Civil Racketeering under the New Jersey RICO Act. EarthCam has been directly and proximately harmed in its business and property by the predicate acts of racketeering committed by Debtor and Co-Conspirators in an amount not less than thirteen million dollars ($13,000,000.00).

313.    Through the wrongful conduct alleged above, Debtor and Co-Conspirators also conspired to violate N.J.S.A. 2C:41-2(c) since they agreed to conduct or participate in the conduct of the affairs of the enterprise and "they agreed to the commission of at least two predicate acts in violation of  N.J.S.A. 2C:41-2, thereby violating N.J.S.A. 2C:41-2(d).

314.    EarthCam has suffered injury to its business or property within the meaning of N.J.S.A. 2C:41-4(c) as a consequence of the violation by Debtor and Co-Conspirators of N.J.S.A. 2C:41-2(d).

**WHEREFORE**, Plaintiffs demand judgment against the Debtor/Defendant for monetary damages in the sum of Thirteen Million Dollars $13,000,000.00, together with such compensatory, consequential, and punitive damages, treble damages as may be appropriate, and excepting such

48

damages, or such portion thereof as the Court deems just, from discharge in this Bankruptcy Case or any future bankruptcy case filed by or against Debtor/Defendant, together with attorneys' fees, costs, and such other and further relief as the Court deems appropriate.

## <u>COUNT XIII</u>
### 11 U.S.C. § 523(a)(2)(A)

315.   Plaintiffs hereby repeat and incorporate by reference each and every allegation of the foregoing paragraphs of this Complaint as if set forth at length herein.

316.   Pursuant to § 523(a)(2)(A) of the United States Bankruptcy Code, a debt incurred by a debtor for money or property obtained by false pretenses, a false representation, or actual fraud shall be nondischargeable.

317.   Debtor fraudulently converted Plaintiffs' personal property by wrongfully exercising control over their funds and misappropriating these funds.

318.   Debtor deliberately and fraudulently concealed his wrongful criminal conduct by creating a false trail of transaction documents and accounting entries to prevent Plaintiffs from discovering the embezzlement.

319.   The acts and conduct of the Debtor described hereinabove constitutes the obtaining of money, property, and/or the extension of credit from Plaintiffs by false pretenses, false representations, and/or actual fraud pursuant to 11 U.S.C. § 523(a)(2)(A)

**WHEREFORE**, Plaintiffs demand judgment against the Debtor/Defendant for monetary damages in the sum of $14,249,907.80, together with such compensatory, consequential, and punitive damages as may be appropriate, and excepting such damages, or such portion thereof as the Court deems just, from discharge in this Bankruptcy Case or any future bankruptcy case filed by or against Debtor/Defendant, together with attorneys' fees, costs, and such other and further relief as the Court deems appropriate.

## COUNT XIV
## 11 U.S.C. § 523(a)(4)

320.    Plaintiffs hereby repeat and incorporate by reference each and every allegation of the foregoing paragraphs of this Complaint as if set forth at length herein.

321.    Section 523(a)(4) of the Code prohibits the discharge of a debt for money for money owed which was obtained by one in a fiduciary capacity.

322.    During Debtor's employment, he was entrusted with Plaintiffs' accounting system, accounts payables, and payroll assignments.

323.    Debtor intentionally breached his fiduciary duties by, *inter alia,* embezzling money for his own benefit and allowing Co-Conspirators to embezzle money, falsifying company records, making unauthorized distributions, paying for personal expenses with Plaintiffs' funds, and engaging in other acts or omissions for his own benefit.

324.    The acts and conduct of the Debtor/Defendant described hereinabove constitutes fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny pursuant to 11 U.S.C. § 523(a)(4).

**WHEREFORE,** Plaintiffs demand judgment against the Debtor/Defendant for monetary damages in the sum of $14,249,907.80, together with such compensatory, consequential, and punitive damages as may be appropriate, and excepting such damages, or such portion thereof as the Court deems just, from discharge in this Bankruptcy Case or any future bankruptcy case filed by or against Debtor/Defendant, together with attorneys' fees, costs, and such other and further relief as the Court deems appropriate.

## COUNT XV
## 11 U.S.C. § 523(a)(6)

325.    Plaintiff hereby repeats and incorporates by reference each and every allegation of the foregoing paragraphs of this Complaint as if set forth at length herein.

50

326.    Section 523(a)(6) of the Code prohibits the discharge of debts relating to willful and malicious injury by the Debtor to another or to the property of another entity.

327.    Debtor willfully and maliciously injured Plaintiffs by, *inter alia,* embezzling funds, and promoting the theft of EarthCam's money and property for Debtor's own benefit.

328.    Debtor orchestrated and engaged in a fraudulent scheme and pattern of outrageous conduct, embezzling Plaintiffs' funds and making false representations to Plaintiffs to conceal his criminal actions. Debtor knew at the time the representations were false. Nevertheless, Debtor made these misrepresentations with the intent to deceive Plaintiffs and to cause injury to Plaintiffs by wrongfully participating in the taking of cameras and other goods and reselling those goods to EarthCam.

329.    The acts and conduct of the Debtor/Defendant described hereinabove constitute willful and malicious injury by the Debtor/Defendant to Plaintiffs and/or to the property of Plaintiffs pursuant to 11 U.S.C. § 523(a)(6).

**WHEREFORE,** Plaintiffs demand judgment against the Debtor/Defendant for monetary damages in the sum of $14,249,907.80, together with such compensatory, consequential, and punitive damages as may be appropriate, and excepting such damages, or such portion thereof as the Court deems just, from discharge in this Bankruptcy Case or any future bankruptcy case filed by or against Debtor/Defendant, together with attorneys' fees, costs, and such other and further relief as the Court deems appropriate.

51

Respectfully submitted,

Dated: August 18, 2025                                ARCHER & GREINER
      Voorhees, New Jersey                   A Professional Corporation

By:  */s/  Douglas G. Leney*
      Douglas G. Leney
      Michael S. Horn
      1025 Laurel Oak Road
      Voorhees, NJ  08043
      Tel: (856) 795-2121
      dleney@archerlaw.com
      mhorn@archerlaw.com

*Attorneys for Plaintiffs, EarthCam, Inc., VGG Holdings LLC and 650 East Crescent LLC*